**SUM-100**

| | | |
|---|---|---|
| **SUMMONS**<br>*(CITACION JUDICIAL)* | RECEIVED<br>CITY CLERK'S OFFICE | *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)*<br>CENTRAL BUSINESS OFFICE 12<br>CENTRAL DIVISION |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

15 JAN -6 PM 2:01

CHRISTOPHER HAYS; CITY OF SAN DIEGO by, and through the
San Diego Police Department; and DOES 1 to 50

2014 DEC -9 P 3:07

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JANE DOE

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* San Diego Superior Court | **CASE NUMBER:**<br>*(Número del Caso):*<br>37-2014-00042669-CU-NP-CTL |
|---|---|

Central Division

330 W. Broadway San Diego, CA 92101

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Brian Watkins, Esq., 925 B Street, Suite 402, San Diego, CA 92101, (619) 255-5930

| DATE: DEC 1 8 2014<br>*(Fecha)* | Clerk, by<br>*(Secretario)* | *R. Babers* | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):* City of San Diego

   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

COPY TO: CITY ATTORNEY
RISK MANAGEMENT
DATE 1-6-15
DCC NAME Conractly

Page 1 of 1

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

| | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| BRANCH NAME: | Central |
| TELEPHONE NUMBER: | (619) 450-7072 |

PLAINTIFF(S) / PETITIONER(S):   Jane Doe

DEFENDANT(S) / RESPONDENT(S):  Christopher Hays et.al.

DOE VS. HAYS [IMAGED]

| NOTICE OF CASE ASSIGNMENT and CASE MANAGEMENT CONFERENCE | CASE NUMBER: 37-2014-00042669-CU-NP-CTL |
|---|---|

## CASE ASSIGNMENT

Judge:  Timothy Taylor                                        Department: C-72

**COMPLAINT/PETITION FILED:** 12/09/2014

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 05/22/2015 | 09:15 am | C-72 | Timothy Taylor |

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS:  The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time.  General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS:  Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE:  Defendant must generally appear within 30 days of service of the complaint.  (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES:  In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

*ALTERNATIVE DISPUTE RESOLUTION (ADR):  THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).



# Superior Court of California
## County of San Diego

# NOTICE OF ELIGIBILITY TO eFILE
# AND ASSIGNMENT TO IMAGING DEPARTMENT

**This case is eligible for eFiling. Should you prefer to electronically file documents, refer to General Order 051414 at www.sdcourt.ca.gov for rules and procedures or contact the Court's eFiling vendor at www.onelegal.com for information.**

**This case has been assigned to an Imaging Department and original documents attached to pleadings filed with the court will be imaged and destroyed. Original documents should not be filed with pleadings. If necessary, they should be lodged with the court under California Rules of Court, rule 3.1302(b).**

On August 1, 2011 the San Diego Superior Court began the Electronic Filing and Imaging Pilot Program ("Program"). As of August 1, 2011 in all new cases assigned to an Imaging Department all filings will be imaged electronically and the electronic version of the document will be the official court file. The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and on the Internet through the court's website.

You should be aware that the electronic copy of the filed document(s) will be the official court record pursuant to Government Code section 68150. The paper filing will be imaged and held for 30 days. After that time it will be destroyed and recycled. **Thus, you should not attach any original documents to pleadings filed with the San Diego Superior Court. Original documents filed with the court will be imaged and destroyed except those documents specified in California Rules of Court, rule 3.1806.** Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant or petitioner to serve a copy of this notice with the complaint, cross-complaint or petition on all parties in the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words **"IMAGED FILE"** in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

# Please refer to the General Order - Imaging located on the San Diego Superior Court website at:

http://www.sdcourt.ca.gov/CivilImagingGeneralOrder



**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**

CASE NUMBER: 37-2014-00042669-CU-NP-CTL    CASE TITLE:
Doe vs. Hays [IMAGED]

**NOTICE:** All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:
        (1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),
        (2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), _and_
        (3) the Notice of Case Assignment form (SDSC form #CIV-721).

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

**Potential Advantages and Disadvantages of ADR**
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| **Potential Advantages** | **Potential Disadvantages** |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

**Most Common Types of ADR**
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

---

**Other ADR Processes:**  There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.  Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

## Local ADR Programs for Civil Cases

**Mediation:**  The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection:  Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005).  The Civil Mediation Panel List, the Available Mediator List, Individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:**  The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:**  The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience.  Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:**  The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:**  To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

## Legal Representation and Advice

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at www.courtinfo.ca.gov/selfhelp/lowcost.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 330 West Broadway<br>MAILING ADDRESS: 330 West Broadway<br>CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827<br>BRANCH NAME: Central | |

| PLAINTIFF(S): Jane Doe |
|---|
| DEFENDANT(S): Christopher Hays et.al. |
| SHORT TITLE: DOE VS. HAYS [IMAGED] |

| **STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER:<br>37-2014-00042669-CU-NP-CTL |
|---|---|

Judge: Timothy Taylor                                     Department: C-72

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process. Selection of any of these options will not delay any case management timelines.

☐ Mediation (court-connected)           ☐ Non-binding private arbitration

☐ Mediation (private)                   ☐ Binding private arbitration

☐ Voluntary settlement conference (private)   ☐ Non-binding judicial arbitration (discovery until 15 days before trial)

☐ Neutral evaluation (private)          ☐ Non-binding judicial arbitration (discovery until 30 days before trial)

☐ Other (*specify e.g., private mini-trial, private judge, etc.*): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: *(Name)* _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____            Date: _____

_____          _____
Name of Plaintiff                         Name of Defendant

_____          _____
Signature                                 Signature

_____          _____
Name of Plaintiff's Attorney              Name of Defendant's Attorney

_____          _____
Signature                                 Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385. Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated: 12/18/2014                         _____
                                          JUDGE OF THE SUPERIOR COURT

| SDSC CIV-359 (Rev 12-10) | **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION** | Page: 1 |
|---|---|---|

3

CM-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Brian E. Watkins & Associates<br>Brian E. Watkins, Esq. (SBN 190599)<br>925 B Street, Suite 402<br>San Diego, CA 92101<br>TELEPHONE NO.: 619.255.5930    FAX NO.: 619.255.5369<br>ATTORNEY FOR *(Name):* Plaintiff - Jane Doe | FOR COURT USE ONLY<br>CIVIL BUSINESS OFFICE 12<br>CENTRAL DIVISION<br><br>2014 DEC -9 P 3: 09<br><br>CLERK-SUPERIOR COURT<br>SAN DIEGO COUNTY, CA<br>DEC 9 1XXX 25T |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Diego
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Central

CASE NAME:
Jane Doe v. Hays et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ **Unlimited**<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ **Limited**<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | 37-2014-00042669-CU-NP-CTL<br><br>JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☑ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is   ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive

4. Number of causes of action *(specify):*  14

5. This case ☐ is   ☑ is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 11/19/2014
Brian E. Watkins, Esq.
_____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one box** for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
    Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment (*non-domestic relations*)
    Sister State Judgment
    Administrative Agency Award (*not unpaid taxes*)
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
    Declaratory Relief Only
    Injunctive Relief Only (*non-harassment*)
    Mechanics Lien
    Other Commercial Complaint Case (*non-tort/non-complex*)
    Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

FILED
CIVIL BUSINESS OFFICE 12
CENTRAL DIVISION

2014 DEC -9  P 3: 10

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

1
2
3
4

Brian Watkins (SBN 190599)
Brian Watkins & Associates
925 B Street, Suite 402
San Diego CA 92101
Tel:    (619) 255-5930
Fax:    (619) 255-5369
bwatkins@brianwatkinslaw.com

5
6
7
8

Paul W. Wong (SBN 181943)
Law Offices of Paul Wong
750 E. Green Street, Suite 204
Pasadena, CA 91101-2126
Tel:    (626) 689-7289
Fax:    (626) 689-7098
paul@pwonglegal.com

9
10
11
12

Michael R. Marrinan (SBN 90484)
Law Offices of Michael R. Marrinan
225 Broadway, Suite 1460
San Diego, CA. 92101
Tel:    (619) 238-6900
Fax:    (619) 238-1097
mrmarrinan@aol.com

13

Attorney for Plaintiff
JANE DOE

14

15

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

16

## FOR THE COUNTY OF SAN DIEGO

17

18

19

20

21

22

23

24

JANE DOE,

        Plaintiff,

    vs.

CHRISTOPHER HAYS; THE CITY OF SAN DIEGO, by and through the SAN DIEGO POLICE DEPARTMENT, a public entity;  and DOES 1 to 50;

        Defendants.

CASE NO.  37-2014-00042669-CU-NP-CTL

(1) ASSAULT AND BATTERY; (2) SEXUAL BATTERY; (3) FALSE ARREST; (4) FREEDOM FROM VIOLENCE OR INTIMIDATION (Cal. Civ. Code §51.7); (5) CIVIL RIGHTS VIOLATION OF CIVIL CODE §52.1; (6) FALSE INPRISONMENT; (7) VIOLATION OF CIVIL CODE § 52.4; (8) VIOLATION OF FEDERAL CIVIL RIGHTS PER 42 U.S.C. §1983; (9) VIOLATION OF FEDERAL CIVIL RIGHTS PER 42 U.S.C. §1983; (10) VIOLATION OF FEDERAL CIVIL RIGHT - 42 U.S.C. §1985(2) and (3); (11) VIOLATION OF FEDERAL CIVIL RIGHTS - 42 U.S.C. §1986; (12) NEGLIGENCE; (13) INTENTIONAL

25

26

27

28

- 1 -
*COMPLAINT FOR DAMAGES*

INFLICTION OF EMOTIONAL
DISTRESS; (14) VICARIOUS
LIABILITY;

JURY TRIAL DEMANDED
[UNLIMITED CIVIL]

Plaintiff JANE DOE alleges as against defendants CHRISTOPHER HAYS; THE CITY OF SAN DIEGO, by and through the SAN DIEGO POLICE DEPARTMENT; and DOES 1-50, inclusive, as follows:

### SUMMARY OF ALLEGATIONS

1.      On October 30, 2011, Plaintiff JANE DOE was stopped, forcibly detained, and sexually assaulted by on-duty SAN DIEGO POLICE DEPARTMENT patrol officer CHRISTOPHER HAYS ("HAYS"). HAYS initially offered to give JANE DOE a ride home, but instead HAYS forcibly detained and falsely imprisoned JANE DOE against his CITY OF SAN DIEGO issued marked patrol car where he repeatedly groped, grabbed, and sexually molested her. JANE DOE was fearful of reporting the crime but nonetheless cooperated with investigating police officers. As a result, HAYS is now in jail. This civil rights lawsuit seeks compensatory and punitive damages against HAYS. In addition, JANE DOE seeks compensatory damages for civil rights violations committed by the CITY OF SAN DIEGO and its police department.

### JURISDICTION AND VENUE

2.      Plaintiff JANE DOE (hereafter "Plaintiff") is, and at all times herein relevant was, an individual residing in the County of San Diego, State of California.

3.      The acts alleged herein took place in the County of San Diego, State of

California. This is an unlimited civil case within the jurisdiction of the San Diego Superior Court.

4.    Plaintiff is informed and believes that Defendant CITY OF SAN DIEGO, by and through the SAN DIEGO POLICE DEPARTMENT, is a municipal government and public entity.

5.    Plaintiff is informed and believes that Defendant CHRISTOPHER HAYS ("HAYS"), along with witnesses ANTHONY AREVALOS, Lieutenant RUDY TAI ("LIEUTENANT TAI"), Sergeant DANNY HOLLISTER ("SERGEANT HOLLISTER"), Sergeant KEVIN FRIEDMAN ("SERGEANT FRIEDMAN"), Sergeant MAX VERDUZCO ("SERGEANT VERDUZCO"), Lieutenant VICTORIA BINKERD ("LIEUTENANT BINKERD"), Assistant Chief ROBERT KANASKI ("CHIEF KANASKI"), Chief DAVID BEJARANO ("CHIEF BEJARANO"), Chief WILLIAM LANSDOWNE ("CHIEF LANSDOWNE"), and Lieutenant JORGE GUEVARA ("LIEUTENANT GUEVARA") are individuals who are or were, at all relevant times during the events and transactions which form the basis of Plaintiff's claims as set forth herein, employed by Defendant CITY OF SAN DIEGO, by and through the SAN DIEGO POLICE DEPARTMENT, or some other division/department of Defendant CITY OF SAN DIEGO, and were and are, at all relevant times, acting under the color of law and in the course and scope of their employment with Defendant CITY OF SAN DIEGO.

6.    Plaintiff is ignorant of the true names and capacities of the defendants sued herein as Does 1 through 50, inclusive, and therefore sue said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that at all times herein relevant each such fictitiously named defendant was and is responsible in some manner for the

occurrences herein alleged, and that Plaintiff's injuries and/or damages were and are directly and/or proximately caused thereby. Plaintiff is informed and believes and thereon alleges that each such fictitiously named defendant is directly and/or indirectly liable on one or more of the causes of action set forth herein.

7.      Plaintiff is informed and believes and thereon alleges that at all times herein relevant, each of the Defendants, including defendant CHRISTOPHER HAYS, Defendant CITY OF SAN DIEGO, by and through the SAN DIEGO POLICE DEPARTMENT, and including each fictitiously named defendant, was the agent, servant, joint venturer, authorized representative and/or employee of each of the remaining defendants, and, except as provided herein, in doing the acts and things hereinafter alleged, was acting within the course and scope of said agency, joint venture, representation, servitude and/or employment, consent, approval, and subsequent satisfaction of each of the remaining defendants. Each of the Defendants was authorized and empowered by each of the other defendants to act and did act as the principal, employee or agent of each of the other defendants. Plaintiff is further informed and believes and thereon alleges that, except as provided herein, each defendant was acting within the course and scope of his/her/its authority in performing the acts herein alleged, and that the acts of each defendant as alleged herein were authorized and/or ratified by the other defendants.

8.      Plaintiff has satisfied all applicable governmental tort claim requirements. As of the preparation of this complaint, defendant CITY OF SAN DIEGO has not served on plaintiff any response as required pursuant to Govt. Code Sections 912.4(a) and 913.

### GENERAL ALLEGATIONS

9.      On or about October 9, 2013, plaintiff was approached by defendant HAYS as she was standing near a 7-11 located near 52nd Street and El Cajon Blvd. in the City of San

Diego. Defendant HAYS, a San Diego police officer, spoke with Plaintiff briefly and determined she had an active arrest warrant. He then returned later and arrested plaintiff. Plaintiff was compliant and offered no resistance. HAYS took Plaintiff to her home after the arrest so she could drop off her belongings with her fiancé. It was at this time that defendant HAYS learned of plaintiff's residence. Plaintiff was later released.

10.     On October 30, 2013, at approximately 4:00 a.m., plaintiff was waiting at a bus stop opposite the same 7-11 store near 52nd Street and El Cajon Blvd. Defendant HAYS, riding in a San Diego Police cruiser and in his standard issued police uniform with a name tag, badge and gun, drove by plaintiff and then slowly turned around and pulled up next to her. Plaintiff was dressed in her pajama pants and a sweatshirt. She was also wearing a bra.

11.     Defendant HAYS, under color of police authority and as a sworn San Diego Police officer, advised Plaintiff that the buses were not running and offered a ride back to her home. Plaintiff declined his offer, feeling uncomfortable at his offer. After she declined, HAYS repeated his offer at least 3 or four more times. HAYS stated that she would be safe if he took her home instead of sitting at the bus stop.

12.     Since she had been arrested only three weeks before and not desiring to get any trouble, Plaintiff felt she had no choice but to obey his repeated offers and get into the back seat of the police cruiser. She felt that would be arrested again or that HAYS might call for backup if she declined again. When she entered into the cruiser, she realized that the officer was the same person that had arrested her three weeks earlier.

13.     HAYS asked her where she was going and she advised him of her home address. HAYS then reminded her that he was the arresting officer from three weeks back. He made small talk but made it clear that he was a police officer and he had a job to do. As they

approached the location where she was staying, she directed him to a parking lot nearby. She exited the vehicle and thanked him for the ride.

14.     Plaintiff walked to a nearby AM PM convenience store and went inside for about 15 minutes. She did not want HAYS to know where she lived.

15.     After waiting about 15 minutes inside the convenience store, she exited and promptly noticed that HAYS had parked nearby her residence and was facing in her direction. She was surprised but had no choice but to walk past him as she returned to her residence. As she approached, Plaintiff asked HAYS why he was still here. Still seated in his patrol car, HAYS told her that he had forgotten to pat her down. There was no backup vehicle and at least 15 minutes had elapsed since HAYS dropped her off.

16.     HAYS stepped out of his vehicle, paused and returned back into his car. He directed Plaintiff to walk out of the view of the convenience store to the rear of a business, which was hidden from the street. HAYS followed her in his patrol car slowly and behind her. Plaintiff was scared and did not know why he wanted to pat her down. She had not been arrested earlier and she had done nothing to provoke him.

17.     In fear for her safety and wellbeing, she complied. When she was in the secluded area behind the business, HAYS began a rambling discourse over his dismay with the requirement that a female officer was required to pat down female detainees. HAYS told Plaintiff bluntly that she was to assume the pat down position and that he was going to pat her down.

18.     HAYS exited his vehicle, laid hands on Plaintiff, and then moved her to the driver side door against the door jamb. He rotated her with his hands so they were facing each other and in very close proximity (around 4 inches). She was trapped between the car door

jamb and HAYS with no room to move away from him.

19.     As HAYS began his first of several sexually intrusive pat downs, HAYS began complaining again about the differences between a male pat down and a female pat down. He complained that during a female pat down, he was not allowed to feel a woman's breasts or vagina area. During a male pat down, he was permitted to feel the same areas. HAYS told Plaintiff that he was a heterosexual male and didn't like having to feel a man's penis during pat downs. HAYS did not miss any part of Plaintiff's body as he pat her down.

20.     HAYS first "showed" Plaintiff how a male officer was required to pat down a female officer. HAYS ran his hands over her body. HAYS then ran his hands over Plaintiff's body like a female officer would perform a search. His pat down was extremely intrusive and designed solely to provide him with sexual gratification, since Plaintiff clearly possessed no weapons or contraband or even remotely offered resistance or non-compliance.

21.     HAYS repeatedly groped Plaintiff's breasts, cupping them and otherwise touching her for his own sexual gratification. This was obvious given the statements he made about his manliness and the unfairness that female officers got to touch women all over their bodies. HAYS groped and squeezed Plaintiff's vagina and buttocks areas repeatedly.

22.     As HAYS squeezed and groped her repeatedly for over 20 minutes, he made many sexual statements, including that Plaintiff had a "fat pussy" and "beautiful breasts." While she was being sexually assaulted by HAYS, Plaintiff loudly asked if the police car was recording. He said no. She continued to speak loudly with the hope that there was a camera recording the assault.

23.     Plaintiff was terrified. It was obvious from the bulge in his pants that HAYS was sexually aroused. He made it clear that he "liked black women." After HAYS repeatedly

- 7 -
*COMPLAINT FOR DAMAGES*

groped Plaintiff, he instructed her to pat him down. Knowing full well that noncompliance might result in an arrest or worse, she rapidly performed a cursory pat down, touching his body per his command. She felt she had no choice but to comply with his demands. Plaintiff was shaking and scared for her safety and well-being.

24.     HAYS finally released her from her involuntary detention and false arrest. She immediately went into her residence for her safety. HAYS left in his vehicle.

25.     On August 22, 2014, HAYS pled guilty to sexual assault under color of authority against plaintiff. He also pled guilty to felony false imprisonment and sexual assault under color of authority against two other victims.

26.     Unfortunately for Plaintiff and other unsuspecting victims of HAYS' conduct, as set forth above, Defendant CITY OF SAN DIEGO, and other, unknown Defendants, failed to properly test, screen, examine or evaluate HAYS prior to his being hired. Plaintiff is informed and believes that Defendants knew that HAYS was not fit to be a police officer and received poor ratings while at the police academy. Upon information and belief, Defendant nonetheless approved him for hire despite the poor ratings because his father-in-law was a high ranking SAN DIEGO POLICE DEPARTMENT official. Moreover, Defendant CITY OF SAN DIEGO, and other, unknown Defendants failed to properly identify HAYS for what he was – a dangerous sexual predator. Plaintiff is informed and believes, and thereon alleges that had Defendant CITY OF SAN DIEGO, and other, unknown Defendants properly tested, screened, examined and evaluated HAYS prior to his hiring, he never would have been hired and therefore could not have committed the acts alleged herein.

27.     Defendants, and each of them, also failed to implement any oversight of its officers regarding reports of molestation of women and created an environment that ignored

the misconduct of its officers and simultaneously rewarded the SAN DIEGO POLICE

personnel who kept quiet and did not report known misconduct of other police officers. These

policies fostered an environment of misconduct and wanton indifference to the rights of

detainees and especially of women.

28.     An additional series of significant transactions and events that form the basis of

Plaintiff's claims as alleged herein was the establishment, usage, implementation, application,

enforcement and promulgation, through cover-up, conspiracy, approval, encouragement and

other related conduct, of unwritten official policies, customs and practices by defendant

HAYS, his peers, supervisors and superiors, including, but not limited to Anthony Arevalos

LIEUTENANT TAI, SERGEANT HOLLISTER, SERGEANT FRIEDMAN, SERGEANT

VERDUZCO, LIEUTENANT BINKERD, CHIEF KANASKI, CHIEF BEJARANO, CHIEF

LANSDOWNE, LIEUTENANT GUEVARA and other, unknown Defendants, which provided

defendant HAYS, Arevalos, and others with the feeling and belief that their conduct, as illegal

as it was, was not going to be punished and would instead be protected as a privilege of their

position as police officers. While "protect and serve" may have been the motto affixed to

HAYS' patrol car, unwritten official policies, customs, and practices existed within the SAN

DIEGO POLICE DEPARTMENT which allowed HAYS, Arevalos, and other sworn officers

to serve themselves, if they so desired, as long as they took reasonable steps to avoid getting

caught. These unwritten official policies, customs, and practices allowed HAYS, Arevalos, and

other sworn officers to feel entitled to repeatedly stalk, molest, harass, kidnap, falsely arrest,

falsely imprison, sexually assault and batter, and violate the civil rights of female citizens of

the City of San Diego without fear of reprisal by their peers, supervisors, superiors or the

District Attorney's office. In accord with the unwritten official policies, customs, and practices

of Defendant HAYS Defendant CITY OF SAN DIEGO, Arevalos, and other sworn officers, selected for their victims women who were out alone at night, thereby providing Defendants with what they considered to be "plausible deniability" in the administration of their unwritten official policies, customs, and practices. If faced with a report of police misconduct, Defendants knew they could evade professional or legal consequences by simply claiming that these female victims were "drunk" and/or otherwise "lacking in credibility."

29.     An additional series of significant transactions and events that form the basis of Plaintiff's claims as alleged herein was the serial stalking, molests, harassments, kidnaps, false arrests, false imprisonments, sexual assaults and batteries, and violations of civil rights of female citizens that HAYS, Arevalos, and other officers committed as on-duty, sworn members of the SAN DIEGO POLICE DEPARTMENT, which were known, encouraged, authorized, and ratified by HAYS' peers, supervisors and superiors and other, unknown Defendants. While patrolling the streets of San Diego in marked police cars and making use of their badges, uniforms, guns, mace, batons, handcuffs and other tools of their trade, HAYS, Arevalos, and other committed these acts under color of authority during otherwise routine traffic stops. While many of the victims of HAYS and the other sworn officers were too scared and intimidated to report these attacks, others did have the courage to report the attacks to peers, supervisors and superiors including, but not limited to, other, unknown Defendants. Some of the attacks were corroborated by fellow law enforcement personnel and other witnesses. Not only did Defendants "look the other way" in the face of HAYS, Arevalos, and other sworn officers' violent and perverted acts and propensities, as well as "turn a deaf ear" to pleas for help from female victims and to corroborating reports by fellow law enforcement personnel and members of the public, but Defendants also acted in such a way as to encourage, authorize

and ratify these attacks, including but not limited to: (1) allowing SAN DIEGO POLICE OFFICERS like AREVALOS to collect inappropriate photographs, undergarments and shoes of female victims, suspects and others, which were obtained by him in the course and scope of his employment with the SAN DIEGO POLICE DEPARTMENT; (2) granting HAYS, Arevalos, and other officers permission to drive young females whom he had stopped for routine traffic violations to quiet, dark or private locations knowing that he would perpetrate sexual attacks against them; (3) allowing HAYS, Arevalos, and other officers to drive victims home without needing to notify dispatch or otherwise document said encounters; (4) allowing Arevalos to drive alone with a victim to a local hospital after she reported his sexual assault of her to law enforcement personnel; (5) allowing Arevalos to continue to patrol without a partner in the Gaslamp District of downtown San Diego after being reported for sexual misconduct and after being investigated by the San Diego County District Attorney's Office for that sexual misconduct; (6) allowing, encouraging and participating in the destruction of evidence of Arevalos' attacks; (7) intimidating, retaliating against, coercing, and defrauding victims, fellow law enforcement personnel and other witnesses in an attempt to suppress evidence of Arevalos' sexual misconduct; and (8) lauding, aggrandizing and rewarding Arevalos in the face of his inappropriate conduct. The conduct of defendants in ignoring the malicious and sexual predatory actions of Arevalos created an environment that defendant HAYS perceived that he could indulge in his own sexual fantasies and sexual assaults without fear of recrimination or punishment.

30.     An additional series of significant transactions and events that form the basis of Plaintiff's claims as alleged herein was the disbanding, by CHIEF LANSDOWNE, and others, of the SAN DIEGO POLICE DEPARTMENT's 20-year old Anti Corruption Unit, or

"Professional Standards Unit." Said unit had, as its official charge, the responsibility of actively and aggressively investigating, uncovering and prosecuting police misconduct, including misconduct that was the subject of allegations by members of the public victimized by officers charged with protecting and serving the citizens of the San Diego community. The elimination of this specialized unit was a signal, beacon and affirmation to members of the SAN DIEGO POLICE DEPARTMENT that those who chose to exploit their positions of power, authority and trust by victimizing members of the community they had sworn to protect, would not be prosecuted, pursued, sanctioned or punished. Rather, the victimization of the public by said sworn officers would be tolerated, protected, covered up and ignored. Moreover, under the authority of CHIEF LANSDOWNE, the process, manner and method by which complaints against sworn officers were handled was significantly altered, preventing members of the public from lodging complaints against sworn officers directly with the Internal Affairs Division of the SAN DIEGO POLICE DEPARTMENT. Under the authority of CHIEF LANSDOWNE, the public was denied access to the Internal Affairs Division and was thereafter required to lodge complaints with low-level desk officers at the local station houses who were not specially trained to handle such complaints. Said change in policy was motivated by Defendants' desire to deter, avoid and prevent full reporting and investigation of officer related misconduct through intimidation, harassment, embarrassment, frustration and obstruction of the public means of seeking redress for officer related misconduct.

      31.     An additional series of significant transactions and events that was known within the SAN DIEGO POLICE DEPARTMENT by HAYS and other police officers form the basis of Plaintiff's claims as alleged herein was Defendants' mishandling of reports and evidence pertaining to the sexual molest and abuse of a young woman Arevalos took into

custody as a Health and Welfare Code § 5150 detainee in the late 1990's, over a decade prior

to Arevalos' sexual assault of Plaintiff. On that occasion, Arevalos, while on patrol in South

Bay, taunted and encouraged a mentally deranged young woman, causing her to be penetrated

vaginally with his department issued baton/nightstick while Arevalos watched and took

Polaroid photographs of her in the act of doing so. When Arevalos' conduct as described above

was forcibly interrupted by one of his peers (hereinafter "Reporting Officer"), Arevalos'

physically threatened said Reporting Officer, warning him to never again interfere with

Arevalos' handling of a detainee.

32.     Later that day, Reporting Officer reported to his own supervisor, SERGEANT

HOLLISTER, what he had witnessed Arevalo's actions. Instead of taking appropriate action

against Arevalos, SERGEANT HOLLISTER became enraged at the Reporting Officer for

having the audacity to "rat out" another officer. SERGEANT HOLLISTER then refused to

take the information about Arevalos' criminal misconduct to Arevalos' supervisor, then

Sergeant Rudy Tai, now LIEUTENANT TAI.

33.     As a consequence, said Reporting Officer took it upon himself to report

Arevalos' criminal misconduct to Arevalos' then supervisor, Sergeant Rudy Tai, now

LIEUTENANT TAI. LIEUTENANT TAI then discussed Arevalos' criminal misconduct with

his own supervisors, LIEUTENANT GUEVARA and Captain Henry Olias, Jr. (now deceased).

Instead of commending Reporting Officer for coming forward, and taking swift, appropriate

action against Arevalos for his criminal misconduct committed while on-duty, LIEUTENANT

GUEVARA, LIEUTENANT TAI and SERGEANT HOLLISTER conspired with Arevalos to

destroy the reported photographs and any other evidence of Arevalos criminal misconduct so

that Reporting Officer's eye witness account of the sexual assault could not be corroborated,

and further conspired not to document the report in any manner. In addition, LIEUTENANT GUEVARA, LIEUTENTANT TAI and SERGEANT HOLLISTER, with the support and backing of their superiors and peers, undertook a campaign of abuse, intimidation and harassment against Reporting Officer as punishment for coming forward with the complaint against Arevalos, including the initiation of improper contact with Reporting Officer's minor daughter. Defendants LIEUTENANT GUEVARA, LIEUTENANT TAI and SERGEANT HOLLISTER's cover-up of Arevalos' criminal misconduct was performed in accord with an unwritten policy which encouraged a two-tier system of justice – one system of unwritten privileges and immunities that applied to SAN DIEGO POLICE DEPARMENT personnel and other members of the "law enforcement community" (including District Attorneys, City Attorneys and their investigators, as well as the family and friends thereof), and another system of codified laws and regulations that applied to ordinary citizens. Defendant HAYS and other police officers were all well versed in the two-tier system of justice and knew full well that their own misconduct would not be punished given the atmosphere of impunity that existed within the SAN DIEGO POLICE DEPARMENT. Further, defendants' misconduct and suppression fostered an environment that reporting officer misconduct would result in punishment and be ostracized by supervisors and other officers.

34.     Additional significant transactions and events that form the basis of Plaintiff's claims as alleged herein include the following. Both before and after Reporting Officer reported Arevalos' abuse of his detainee as set forth above, Arevalos collected photographs of victims of his on-the-job sexual abuse of female detainees and other victims of his on-the-job sexual abuse, placed over fifty (50) of them in a photo-album and shared them with and showed them to his colleagues, peers and supervisors in the locker room of the police station.

Among the many that saw or were aware of said photographs were LIEUTENANT TAI and SERGEANT HOLLISTER. Among the many photographs that Arevalos shared with his colleagues, peers and supervisors were photographs of Arevalos being orally copulated in uniform and in the back seat of a patrol car, and engaging in sexual intercourse in uniform and in the back of a patrol car. While showing said photographs to his colleagues, peers and supervisors, Arevalos bragged that it was he who was depicted in the photographs. This continued to foster the environment of impunity and a sense that reporting misconduct would result in punishment. Instead, officers, supervisors and peers excused misconduct as fun and games instead of punishing such misdeeds as unlawful and inexcusable.

35.     Additional significant transactions and events that form the basis of Plaintiff's claims as alleged herein include the following. Plaintiff is informed and believes that HAYS and Arevalos were not, and are not, the only members of the SAN DIEGO POLICE DEPARTMENT who have engaged, and who are currently and continuing to engage in acts of sexual abuse with female detainees. Plaintiff is informed and believes, and thereon alleges, that there was, and there remains, a group of sworn members of the SAN DIEGO POLICE DEPARTMENT working at the police stations patrolling the San Ysidro border with Mexico, the Mission Valley/Hotel Circle area, the beach areas of Ocean Beach, Pacific Beach and Mission Beach, the Downtown Gaslamp District and other areas of San Diego, who regularly, and with impunity, prey upon women suspected of being under the influence of alcohol. Said sworn officers have and do continue to stalk these areas looking for women leaving dances, bars and nightclubs (and in the case of the border, knowing that the legal drinking age in Mexico is 18, women crossing the border) and pull them over. On such occasions, said sworn officers have and do continue to take advantage of women who may or may not have been

drinking, knowing that their defenses are down, their vulnerability high, and their credibility low (as compared with their own, being sober, armed, in uniform and in a position of trust, authority and power), by coercing sexual favors from them. This conduct was and is well known to members of the SAN DIEGO POLICE DEPARTMENT, and in particular was and is well known to Defendants. However, Defendants failed and refused, and continue to fail and refuse, to take any action against these sexual predators, choosing instead to honor a "code of silence" of protecting their own.

36.     Additional significant transactions and events that form the basis of Plaintiff's claims as alleged herein include the following. In or about 2001, Arevalos stopped a female for an alleged traffic violation. During the course of said traffic stop, Arevalos sexually molested said female. As a consequence of that sexual molest, the victim thereof reported Arevalos to his superiors. Eventually, the report of the incident came to the attention of then San Diego Police Chief, CHIEF BEJARANO. CHIEF BEJARANO met with the victim on at least two occasions to hear the details of the sexual molest. CHIEF BEJARANO advised the victim that Arevalos had been properly dealt with and that Arevalos would never again be allowed to do what he did to her or to anyone else. This was, unfortunately, a blatant misrepresentation, as Arevalos was never punished or disciplined for his attack on this victim. Defendants, and each of them, knew full well that their failure discipline and/or punish Arevalos and other officers known to engage in sexual misconduct only promoted the sense of invulnerability of defendants when they engaged in any sexual assault under color of authority. Defendants knew full well that the two-tier system of injustice pervaded the SAN DIEGO POLICE DEPARTMENT and that officers like HAYS and Arevalos had no real fear of punishment should their misconduct and/or misdeeds be reported or come to light.

37.     Additional significant transactions and events that form the basis of Plaintiff's claims as alleged herein include the following. In or about July 2007, Arevalos pulled over a sixteen year old driver and forced her to bend over to show him her current registration tabs. When reports were made to Arevalos' superiors SERGEANT VERDUZCO and LIEUTENANT BINKERD by the minor, the minor's father, and a family friend who was a patrol sergeant on the SDPD, no disciplinary action was taken against Arevalos, documentation regarding the report was destroyed, and the family friend was harshly rebuked for siding with a civilian as against Arevalos. In or about September 2009, Arevalos stopped and detained a young, female motorist he claims to have suspected of driving under the influence of alcohol. However, instead of arresting and booking said detainee, Arevalos sexually assaulted the female he had detained. When this victim reported the incident to a detective on the SDPD, no action was taken. In or about January 2010, Arevalos sexually assaulted a young female during an arrest for driving under the influence. When her step-father reported the incident to police personnel at the Northeastern Division sub-station, no action was taken. On February 20, 2010, a sexual assault victim reported that Arevalos had sexually assaulted her en route to Las Colinas Detention Center. When the victim called back to days later to ask about the status of SDPD's investigation, she was told by the SDPD that investigation had begun on her report. Eventually, an investigation was initiated and the sexual assault was reported to, among others, CHIEF KANASKI, who decided to place Arevalos back into active service in the SDPD traffic division even before the Internal Affairs investigation of sexual assault had been completed. Plaintiff is informed and believes that Arevalos engaged in many additional such sexual assaults upon female detainees over the entire course of his career as a police officer, including assaults occurring on April 29; 2010, October 22, 2010; December 5, 2010; January 14, 2011;

March 5, 2011; March 8, 2011; and March 9, 2011. Many police officers within the SDPD

were well versed in the sexual escapades of Arevalos and other officers but pointedly ignored

their misconduct because of the culture fostered by Defendants, and each of them.

38.     Plaintiff is informed and believes that on one or more of the above-referenced

occasions, LIEUTENANT TAI, SERGEANT HOLLISTER, SERGEANT FRIEDMAN,

SERGEANT VERDUZCO, LIEUTENANT BINKERD, CHIEF KANASKI, CHIEF

BEJARANO, CHIEF LANSDOWNE, LIEUTENANT GUEVARA and other, unknown peers

and supervisors of Arevalos assisted, covered for and otherwise allowed Arevalos free reign in

committing the acts set forth above. For example, on February 20, 2010, when one of

Arevalos' victims demanded to speak with a supervisor after being hooded and digitally

penetrated by Arevalos in the back of a patrol car during a roadside stop, SERGEANT

FRIEDMAN arrived on the scene, refused the victim's request for a rape kit and refused the

victim's request that an officer, other than Arevalos, transport her to the hospital when the Las

Colinas Detention Center refused to admit her for booking due to her precarious medical

condition. SERGEANT FRIEDMAN's interference with the collection of forensic evidence

undermined a thorough investigation of the victim's claims and impaired the District

Attorney's ability to prosecute Arevalos for his criminal conduct. SERGEANT FRIEDMAN,

with the aid of his co-defendants and other sworn officers yet unknown, further impaired the

effective exercise of prosecutorial discretion by falsely impugning the victim's credibility and

otherwise attempting to improperly influence members of the District Attorney's office. In

fact, SERGEANT FRIEDMAN was subsequently investigated and prosecuted for attempting

to fix the tickets of several Deputy District Attorneys. HAYS, like many other SDPD, all knew

that the two-tier justice system would protect them from their own misconduct.

39.     Additional significant transactions and events that form the basis of Plaintiff's claims as alleged herein include the following. Evidence exists regarding the large amount of unaccounted for time during Arevalos' on-duty patrol assignments, and in particular, during his many stops of female detainees, the number of which Plaintiff is informed and believes far exceeded his stops of male detainees.

40.     Additional significant transactions and events that form the basis of Plaintiff's claims as alleged herein include the following. During the course of his employment with the SAN DIEGO POLICE DEPARTMENT, Arevalos took numerous compromising, sexually explicit photographs of many of his detainee victims, and sent them, electronically and otherwise, to SERGEANT FRIEDMAN, SERGEANT HOLLISTER, and LIEUTENTANT TAI, and other members of the SAN DIEGO POLICE DEPARTMENT.

41.     Additional significant transactions and events that form the basis of Plaintiff's claims as alleged herein include the following. On or about January 2, 2010, Arevalos stopped a female driver and her female passenger for alleged drunk driving. During the course of that traffic stop, Arevalos made sexually inappropriate comments about both females' bodies and physical appearances. During the traffic stop, Arevalos was joined by his supervisor, who Plaintiff believes was SERGEANT FRIEDMAN. Arevalos requested SERGEANT FRIEDMAN's permission and clearance to drive both of the female detainees to their home, alone. Despite knowing Arevalos penchant and proclivities to molest his female detainees, SERGEANT FRIEDMAN gave Arevalos permission to do so. Arevalos did, in fact, drive the two females to the residence they shared, and using force and intimidation, entered said residence, where he stayed for the next one to two hours. During that time, Arevalos continued to make sexually suggestive and abusive comments to both females about their breasts and

legs, asked how they would look not wearing a bra, and commented on how they looked when their breasts moved.

42.     Additional significant transactions and events that form the basis of Plaintiff's claims as alleged herein were Defendants' actions and inactions that constitute the illegal cover-up of police misconduct by Arevalos, other offending officers, their peers, supervisors and superiors, including other, unknown Defendants. Knowing Arevalos' and other sworn officers' perverted propensities and predatory habits while on duty with regard to vulnerable female members of the public, not only did Defendants fail to punish or terminate Arevalos' and the other offending sworn officers' employment with the SAN DIEGO POLICE DEPARTMENT, but Plaintiff is informed and believes, and thereon alleges, that Defendants conspired to, and did in fact, purposefully and systematically cover-up or encourage the covering-up of said police misconduct. Furthermore, Defendants intentionally and systematically sought to improperly quash the investigation and prosecution of Arevalos and the other yet unidentified sworn officers by law enforcement. Not until an Arevalos victim reported her attack, part of which was caught on hidden camera thereby making it impossible for Defendants to further cover-up for Arevalos, or each other, were Defendants forced to fire Arevalos.

43.     Defendants' fostering of the two-tier system of injustice has so thoroughly pervaded the SAN DIEGO POLICE DEPARTMENT that the arrest of Arevalos did not deter other SDPD officers from continuing to engage in their own sexual misconduct. SDPD officers all knew that Arevalos' arrest occurred because video evidence existed of Arevalos' misconduct and not because SDPD had changed its two-tier system of protecting its officers from their own bad conduct. Such acts of cover-up encompass the suppression of evidence, and

the use of intimidation, retaliation, coercion, undue influence, trickery, intentional mis-

characterization and fraudulent identification of Category I complaints against Arevalos and

others as Public Service Inquiries or "PSI's", and the encouragement thereof, in an attempt to

dissuade victims, law enforcement, and other witnesses from coming forward with their stories,

observations and testimony, and to avoid the reporting of said complaints to the Citizen

Review Board on Police Misconduct ("CRB"), to Internal Affairs ("IA"), to the Mayor's

Office and to others, so that proper, complete and factually based investigations, prosecutions

and punishments could not be effectuated against Arevalos and said other sworn officers.

Specific instances of improper cover-up include, but are not limited to: (1) failure to properly

document and otherwise communicate to supervisors, to the CRB, to the Mayor's Office or to

IA, a citizen complaint of sexual misconduct perpetrated by Arevalos and others; (2) the

refusal to provide a rape kit or safe transport to a local hospital when requested by one of

Arevalos' sexual assault victims; (3) the destruction of evidence of Arevalos' on-duty sexual

misconduct, including MCT messages, photographs and DNA samples; (4) threats of character

assassination and other harm to victims, fellow officers, and other witnesses who reported

Arevalos' sexual assaults; (5) threats to make public the identity of Arevalos' sexual assault

victims; (6) threats of on-the-job retaliation to fellow officers who reported or considered

reporting sexual misconduct, including the threat of withholding officer-required back-up; (7)

the improper contact and questioning of the underage daughter of a retired police officer, said

officer having previously witnessed and reported one of Arevalos' sexual assaults; (8) the

beating and arrest of a fellow law enforcement officer who attempted to interfere with the

sexual harassment of a detainee by SAN DIEGO POLICE DEPARTMENT officers during a

routine traffic stop in the Gaslamp; (9) fraudulently misrepresenting to one of Arevalos' sexual

- 21 -
*COMPLAINT FOR DAMAGES*

assault victims that Arevalos' conduct would be appropriately punished such that it would

never happen again, as well as fraudulently misrepresenting to another of Arevalos' sexual

assault victims that an IA investigation had begun, even though no such investigation had been

initiated; (10) attempts to interfere with prosecutorial discretion by improperly trying to fix

tickets for Deputy District Attorneys; and (11) influencing law enforcement personnel by

offering to provide or withhold employment, endorsements, advancements, re-assignments,

and promotions. The misconduct of Arevalos and other SAN DIEGO POLICE

DEPARTMENT officers were well known within the SDPD but supervisors, including

defendants, ignored the flagrant misconduct because of a sense that they were above the law

and law enforcers but not subject to the same rules as the general public.

44.     On March 8, 2011, Plaintiff was the victim of numerous, serious and violent

crimes as described in Penal Code sections 207(a), 220, 289, 422.7, and 646.9, and related

crimes perpetrated by then on-duty Arevalos. An Arevalos victim was sexually assaulted,

molested, harassed, battered, kidnapped, falsely arrested, falsely imprisoned and deprived of

her civil rights at the hands of Arevalos while he was an on-duty, uniformed police officer with

the SAN DIEGO POLICE DEPARTMENT. More specifically, the Arevalos victim was locked

in a 7-Eleven bathroom by on-duty police Arevalos, forced to expose her breasts and genitals,

and was digitally penetrated by Arevalos. The Arevalos victim reported the sexual assault right

away and, fortunately for her and the female citizens of San Diego, Arevalos' crimes were

caught on 7-Eleven's video surveillance cameras. At the time of this attack, Arevalos was

being supervised by LIEUTENANT TAI, SERGEANT HOLLISTER, SERGEANT

FRIEDMAN, CHIEF LANSDOWNE, and other, unknown Defendants. Arevalos could not,

and would not have perpetrated his attack on the Arevalos victims had Defendants not failed in

their hiring and on-going supervision of Arevalos and other sworn members of the SAN

DIEGO POLICE DEPARTMENT, including their failure to report, investigate, punish, or

terminate Arevalos, and others, for their repeated acts of sexual misconduct. Moreover,

Arevalos could not, and would not have perpetrated his attack on the Arevalos victims had

Defendants not established unwritten official policies, customs and practices which permitted

and encouraged Arevalos, and other sworn members of the SAN DIEGO POLICE

DEPARTMENT to act in violation of the law, and thereafter authorized, ratified, and covered

up Arevalos' and other officers' sexual misconduct. In fact, Defendant LIEUTENANT TAI is

and was, at the time of the sexual assault on the Arevalos victims, one of only two individuals

on the entire department reporting directly to Defendant CHIEF LANSDOWNE in the chain of

command, as his Head of the SDPD Criminal Intelligence Unit.

45.    As set forth above, at all times relevant herein, Defendant CITY OF SAN

DIEGO, by and through the SAN DIEGO POLICE DEPARTMENT, its officers, detectives,

supervisors and high ranking officials with the authority and ability to set and enforce SAN

DIEGO POLICE DEPARTMENT policy and procedure, including LIEUTENANT TAI,

SERGEANT HOLLISTER, SERGEANT FRIEDMAN, SERGEANT VERDUZCO,

LIEUTENANT BINKERD, CHIEF KANASKI, CHIEF BEJARANO, CHIEF LANSDOWNE,

LIEUTENANT GUEVARA and other, unknown Defendants, had, as a matter of fact, created

and implemented unwritten official policies, customs, and practices that permitted and

encouraged its agents, employees, and co-conspirators to deny Plaintiff and other female

members of the general public their rights to equal protection under the law and to due process

of law, their right to be free from unreasonable searches and seizures, and other rights

guaranteed under the United States and California Constitutions, as well as statutory and

common law rights as more specifically set forth herein. These actions and implementation of the unwritten polices, customs and practices were well known to HAYS and others and fostered an environment of capriciousness, impunity and disregard for the rights of the general public, especially females.

46.     At all relevant times herein, HAYS, Arevalos, and other unknown officers and Doe Defendants acted under the color of authority and exercised their police powers, including, but not limited to, making use of their badges, uniforms, vehicles, emergency lights, radios, guns, mace, batons, handcuffs, and all of the actual and perceived authority that said tools of the trade imply, to carry out the unlawful acts alleged herein.

47.     Defendants, as well as those other yet unidentified sworn San Diego Police Officers, singled out an Arevalos victims and all of the other wrongfully detained and sexually abused female victims for sexual abuse, discrimination and harassment because they are women. Arevalos stalked his victim, kidnapped, falsely arrested and imprisoned her in violation of the California Penal Code and then subjected her to sexual assault and battery and harassment, involving sexual penetration, as defined under Penal Code section 289.

48.     HAYS' actions, as well as the actions of the other Defendants and those other yet unidentified sworn San Diego Police Officers, were an offense to the personal dignity of Plaintiff and caused Plaintiff and the other victims to suffer physical injuries, severe humiliation, outrage, anxiety, fear, mental anguish and emotional distress.

49.     Plaintiff is informed and believes that HAYS, like Arevalos' actions, including the stalking, sexual assault, molest, harassment, battery, kidnap, false arrest, false imprisonment and deprivation of civil rights, as well as the actions of the other Defendants and those other yet unidentified sworn San Diego Police Officers, were motivated by the gender of

Plaintiff and those other wrongfully detained and sexually abused women, as Defendants and those other yet unidentified sworn San Diego Police Officers singled out Plaintiff and those other wrongfully detained and sexually abused women for the above-referenced treatment because they are and were women.

50.     By their conduct, HAYS and other yet unidentified sworn San Diego Police Officers, all have engaged in a conspiracy intended to deprive Plaintiff and the other victims of their constitutionally protected civil rights to live and work within the City of San Diego without being singled out because of their gender and subjected to stalking, kidnap, false arrest, false imprisonment and unwanted, harmful and offensive sexual contact, molestation, harassment, assault and battery at the hands of its uniformed police officers.

51.     Plaintiff is informed and believes and thereon alleges that the actions of HAYS against her as described herein are not the first time that HAYS or other officers like Arevalos engaged in this type of conduct as an on-duty, uniformed police officer with the SAN DIEGO POLICE DEPARTMENT, and further believes that HAYS, like Arevalos, was not the only sworn officers participating in said conduct. As set forth above, Plaintiff is informed and believes and thereon alleges that HAYS, like Arevalos, his co-defendants and others, had, on numerous occasions prior to the attack on Plaintiff, engaged in the same or similar conduct with respect to other female members of the general public while HAYS, like Arevalos, and those other yet unidentified sworn San Diego Police Officers were on-duty, uniformed police officers with the SAN DIEGO POLICE DEPARTMENT and while under the supervision of and with the knowledge, consent, approval, encouragement and/or acceptance of LIEUTENANT TAI, SERGEANT HOLLISTER, SERGEANT FRIEDMAN, SERGEANT VERDUZCO, LIEUTENANT BINKERD, CHIEF KANASKI, CHIEF LANSDOWNE,

CHIEF BEJARANO, LIEUTENANT GUEVARA and other, unknown Defendants.

52.     Plaintiff is informed and believes and thereon alleges that Defendants were, prior to HAYS' own stalking, sexual assault, molest, harassment, battery, kidnap, false arrest and false imprisonment of Plaintiff and violation of Plaintiff's civil rights, made aware of Arevalos' and other officers' prior similar acts, proclivities, propensities and willingness to engage in the same or similar acts while uniformed, on-duty police officers for the SAN DIEGO POLICE DEPARTMENT and thus knew, or with reasonable diligence should have known, that Arevalos and other officers like HAYS were sexual predators and a danger to Plaintiff and other female members of the general public.

53.     As set forth herein, Defendants knew that they had sexual predators like Arevalos because, for example, Arevalos was: (1) collecting and keeping, for the primary purpose of satisfying his perverse, lewd and lascivious sexual desires, inappropriate, compromising, lewd and lascivious photographs of female victims, suspects and others which were obtained by him in the course and scope of his employment with the SAN DIEGO POLICE DEPARTMENT; (2) collecting and keeping, for the primary purpose of satisfying his perverse, lewd and lascivious sexual desires, the undergarments, shoes and photographs thereof, belonging to female victims, detainees, suspects and others which were obtained by him in the course and scope of his employment with the SAN DIEGO POLICE DEPARTMENT; (3) habitually, and for the primary purpose of satisfying his perverse, lewd and lascivious sexual desires, initiating traffic stops on female members of the general public so that he could advance his plan, as a sexual predator, to threaten, kidnap, falsely arrest, falsely imprison, sexually assault, molest, harass, batter and deprive said female members of the general public of their civil rights; (4) habitually, and for the primary purpose of satisfying

- 26 -

his perverse, lewd and lascivious sexual desires, stalking, in person, by telephone, and other electronic means, female members of the general public so that he could advance his plan, as a sexual predator, to threaten, kidnap, falsely arrest, falsely imprison, sexually assault, molest, harass, batter and deprive said female members of the general public of their civil rights; and (5) habitually, and for the primary purpose of satisfying his perverse, lewd and lascivious sexual desires, digitally and otherwise penetrating and penetrating with foreign objects the vaginas of females who he targeted for abuse.

54.     As a consequence of said knowledge, Defendants were aware of the danger Arevalos posed, individually as a sexual predator unsuspecting, vulnerable female targets of Arevalos' criminal conduct, and generally as a corrosive influence within the SDPD because of Arevalos' willingness to openly share his unlawful sexual exploits. Unfortunately for Plaintiff and other victims, Defendants failed to take any or adequate steps to prevent, mitigate or otherwise avoid the obvious danger Arevalos posed to the general public and women like Plaintiff who all justifiably relied on Defendants, and each of them, to adequately screen, hire, train, retain, supervise, report, discipline, monitor, control and terminate, if necessary, officers like HAYS and Arevalos as sworn peace officers. In fact, Defendants' conduct in condoning, approving, ratifying, consenting to, encouraging, accepting, refusing to stop, failing to prevent, failing to train, covering up, failing to report, failing to document, fraudulently mis-characterizing citizen and co-worker complaints, and remaining silent in the face of such conduct, created an atmosphere and culture of acceptance of Arevalos' pattern and practice of conduct that went beyond a simple "code of silence," and which amounted to unwritten official policies, customs, and practices that provided HAYS and before Arevalos with the feeling, assurance and belief that his conduct, illegal as it was, was not going to be punished and would

instead be protected as a privilege that went along with his badge and gun as long as there was no outside third party evidence of misconduct. Defendants knew, or it should have been obvious to Defendants, that these unwritten official policies, customs, and practices were likely to result in a deprivation of Plaintiff's rights to equal protection under the law, to due process of law, her right to be free from unreasonable searches and seizures, and other rights guaranteed under the United States and California Constitutions, as well as statutory and common law rights as more specifically set forth herein.

55.     In doing the things herein alleged, Defendants, and each of them, engaged in a pattern and/or practice of discriminatory policing in violation of the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141; as well as violations of the Civil Rights provisions of 42 U.S.C. §§ 1983, 1985 and 1986 and California Civil Code §§ 51.7, 52.1 and 52.4.

56.     As a consequence of Defendants' conduct as set forth above, Plaintiff has lived in constant, abiding and continuing fear for her safety and well-being each and every day, as Plaintiff daily used the public streets, highways and other public areas in SAN DIEGO where she remained vulnerable to repeated acts of violence, molest, threats, intimidation and other violations of her civil rights. Specifically, Plaintiff has a constant, continuing and abiding fear that because of the systematic cover-up of HAYS, Arevalos and such other sworn officers' conduct, she remains vulnerable to the same and similar conduct by sworn officers other than HAYS.

## PLAINTIFF'S PROTECTED PRIVACY STATUS

57.     Due to the sexual nature of the crimes, Plaintiff requests and is entitled to remain anonymous. Without the use of a pseudonym, her true name and face would become

publicly associated with the details of the sexual assault against her and it would cause her further serious emotional distress as she fears retaliation, retribution and/or recrimination from members or former members of the CITY OF SAN DIEGO, SAN DIEGO POLICE DEPARTMENT, other law enforcement agencies, and misguided members of the public at large who resent Plaintiff for having come forward with her complaint against HAYS and encouraging others, by her act of bravery, to come forward.

58.     Public disclosure would expose Plaintiff to further humiliation, ridicule, and to possible future threats, sexual harassment or stalking, and may result in retaliation by current or former members of the CITY OF SAN DIEGO, SAN DIEGO POLICE DEPARTMENT or other law enforcement agencies whose members or former members resent Plaintiff for having reported HAYS, for having testified against HAYS in his criminal proceeding, and for bringing and prosecuting the current lawsuit.

59.     Accordingly, pursuant to Penal Code sections 293 and 293.5, Plaintiff requests the continued protection of pseudonym status in order to safeguard her privacy and to prevent further emotional distress, humiliation and further sexual harassment, stalking, battery, assault and violations of her civil rights.

## FIRST CAUSE OF ACTION FOR

## ASSAULT AND BATTERY

### (As Against All Defendants)

60.     Plaintiff incorporates by reference each and every prior and subsequent allegation as though fully set forth herein.

61.     HAYS committed assault and battery on Plaintiff by acting with the intent to cause, and by causing, harmful or offensive sexual contact with Plaintiff. This contact was

made without Plaintiff's consent, permission and against her will.

62.     At all times herein relevant, HAYS was employed by and acting within the course and scope of his employment with the City of San Diego Police Department when he committed battery on Plaintiff.

63.     In so doing, and as alleged herein, HAYS and all other unknown Defendants acted under color of authority, within the course and scope of employment, agency, and in conspiracy with each other, and pursuant to the established unwritten official policy, custom, and practice of the SAN DIEGO POLICE DEPARTMENT, and as also alleged herein, the conduct of HAYS and all other Defendants was consented to, ratified, approved, concealed, covered up, condoned, accepted, and/or encouraged by each other, for their own benefit and gain, knowing that the conduct would result in harm to Plaintiff and other female members of the general public similarly situated.

64.     Plaintiff was harmed and Defendants' conduct was a direct, proximate, and substantial factor in causing Plaintiff harm. If not for the failures and misconduct of Defendants, as alleged herein, Plaintiff would not have suffered physical harm, serious and severe emotional distress, anxiety, depression, humiliation, shame, loss of sleep, fear and rage all to her general damage, in an amount to be proven at the time of trial.

65.     As a further direct and proximate result of Defendants' conduct, Plaintiff will suffer additional special damages in the form of lost future earnings, benefits and/or other prospective damages in an amount according to proof at the time of trial.

66.     As a further direct and proximate result of Defendants' conduct, Plaintiff has suffered mental and emotional pain, distress and discomfort, all to her detriment and damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the

time of trial.

67.     In engaging in the conduct alleged herein, Defendants acted oppressively, maliciously, fraudulently, and/or outrageously toward Plaintiff, with conscious disregard for her known due process rights and with the intention of causing, and/or willfully disregarding the probability of causing, unjust and cruel hardship to Plaintiff. In so acting, Defendants, and each of them, intended to and did vex, injure and sexually molested Plaintiff. Therefore, an assessment of punitive damages should be made against Defendant in an amount sufficient to punish him and to prevent him from willfully engaging in future discriminatory and/or retaliatory conduct.

## SECOND CAUSE OF ACTION FOR

## SEXUAL BATTERY

### (As Against All Defendants)

68.     Plaintiff incorporates by reference each and every prior and subsequent allegation as though fully set forth herein.

69.     HAYS and the other defendants have all committed sexual battery on Plaintiff in violation of Civil Code § 1708.5 by acting with the intent to cause, and by causing, harmful or offensive contact with Plaintiff's sexual organs and breasts. This contact was made without Plaintiff's consent, permission and against her will.

70.     At all times herein relevant, HAYS was employed by and acting within the course and scope of his employment with the SAN DIEGO POLICE DEPARTMENT when he committed sexual battery on Plaintiff.

71.     In so doing, and as alleged herein, HAYS and all other Defendants acted under color of authority, within the course and scope of employment, agency, and in conspiracy with

- 31 -
*COMPLAINT FOR DAMAGES*

1   each other, and pursuant to the established unwritten official policy, custom, and practice of the

2   SAN DIEGO POLICE DEPARTMENT, and as also alleged herein, the conduct of HAYS and

3   all other Defendants was consented to, ratified, approved, concealed, covered up, condoned,

4   accepted, and/or encouraged by each other, for their own benefit and gain, knowing that the

5   conduct would result in harm to Plaintiff and other female members of the general public

6   similarly situated.

7

8       72.   Plaintiff was harmed and Defendants' conduct was a direct, proximate, and

9   substantial factor in causing Plaintiff harm. If not for the failures and misconduct of

10  Defendants, as alleged herein, Plaintiff would not have suffered physical harm, serious and

11  severe emotional distress, anxiety, depression, humiliation, shame, loss of sleep, fear and rage

12  all to her general damage, in an amount to be proven at the time of trial.

13

14      73.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered

15  special damages in the form of lost earnings, benefits and/or out-of-pocket expenses in an

16  amount according to proof at the time of trial. As a further direct and proximate result of

17  Defendant's conduct, Plaintiff will suffer additional special damages in the form of lost future

18  earnings, benefits and/or other prospective damages in an amount according to proof at the

19  time of trial.

20

21      74.   As a further direct and proximate result of Defendants' conduct, Plaintiff has

22  suffered mental and emotional pain, distress and discomfort, all to her detriment and damage in

23  amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the

24  time of trial.

25

26      75.   In engaging in the conduct alleged herein, Defendant acted oppressively,

27  maliciously, fraudulently, and/or outrageously toward Plaintiff, with conscious disregard for

28

her known due process and constitutional rights and with the intention of causing, and/or

willfully disregarding the probability of causing, unjust and cruel hardship to Plaintiff. In so

acting, Defendant intended to and did vex, injure and annoy Plaintiff. Therefore, an assessment

of punitive damages should be made against Defendant in an amount sufficient to punish them

and to prevent them from willfully engaging in future discriminatory and/or retaliatory

conduct.

### THIRD CAUSE OF ACTION FOR FALSE ARREST

### (As Against All Defendants)

76.     Plaintiff incorporates by reference each and every prior and subsequent

allegation as though fully set forth herein.

77.     HAYS wrongfully arrested Plaintiff JANE DOE without a warrant and without

probable cause. HAYS had not basis to hold her as Plaintiff had not committed any crime and

had already exited the vehicle and had gone into an establishment without giving HAYS any

cause to arrest her. This action was made without Plaintiff's consent, permission and against

her will.

78.     At all times herein relevant, HAYS was employed by and acting within the

course and scope of his employment with the SAN DIEGO POLICE DEPARTMENT when he

committed sexual battery on Plaintiff. Pursuant to the established unwritten official policy,

custom, and practice of the SAN DIEGO POLICE DEPARTMENT, and as also alleged herein,

the conduct of HAYS and all other unknown Defendants was consented to, ratified, approved,

concealed, covered up, condoned, accepted, and/or encouraged by each other, for their own

benefit and gain, knowing that the conduct would result in harm to Plaintiff and other female

members of the general public similarly situated.

79.     Plaintiff was harmed and Defendants' conduct was a direct, proximate, and substantial factor in causing Plaintiff harm. If not for the failures and misconduct of Defendants, as alleged herein, Plaintiff would not have suffered physical harm, serious and severe emotional distress, anxiety, depression, humiliation, shame, loss of sleep, fear and rage all to her general damage, in an amount to be proven at the time of trial.

80.     In committing the acts as alleged herein, HAYS acted with the intent to harm Plaintiff or with a conscious disregard for Plaintiff's rights and thus acted with malice, fraud or oppression as defined in California Civil Code section 3294, entitling Plaintiff to an award of punitive damages in an amount to be proven at the time of trial.

# FOURTH CAUSE OF ACTION FOR
## VIOLATION OF THE CALIFORNIA RALPH RIGHTS ACT FREEDOM FROM
## VIOLENCE OR INTIMIDATION
### (As Against All Defendants)

80.     Plaintiff incorporates by reference each and every prior and subsequent allegation as though fully set forth herein.

81.     California Civil Code §51.7 states that "all persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of [their sex]."

82.     At all times herein relevant, HAYS, during the course and scope of his employment with CITY OF SAN DIEGO, made sexual advances towards Plaintiff, sexually assaulted her, made sexual requests and demands for sexual compliance by Plaintiff, and engaged in other acts of violence, or intimidation by threat of violence, against Plaintiff

because of her gender.

83.     Pursuant to the established unwritten official policy, custom, and practice of the SAN DIEGO POLICE DEPARTMENT, and as also alleged herein, the conduct of HAYS and all other unknown Defendants was consented to, ratified, approved, concealed, covered up, condoned, accepted, and/or encouraged by each other, for their own benefit and gain, knowing that the conduct would result in harm to Plaintiff and other female members of the general public similarly situated. HAYS and the other Defendants, as active duty SDPD officers, all knew that their actions were unlawful and in violation of Civil Code §51.7.

84.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered special damages in the form of lost earnings, benefits and/or out-of-pocket expenses in an amount according to proof at the time of trial. As a further direct and proximate result of Defendants' conduct, Plaintiff will suffer additional special damages in the form of lost future earnings, benefits and/or other prospective damages in an amount according to proof at the time of trial.

85.     As a further direct and proximate result of Defendants' conduct, Plaintiff has suffered mental and emotional pain, distress and discomfort, all to her detriment and damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

86.     In committing the acts as alleged herein, HAYS acted with the intent to harm Plaintiff or with a conscious disregard for Plaintiff's rights and thus acted with malice, fraud or oppression as defined in California Civil Code section 3294, entitling Plaintiff to an award of punitive damages in an amount to be proven at the time of trial.

87.     Further, Plaintiff is entitled to a civil penalty pursuant to Civil Code § 52(b).

88.     Finally, Plaintiff is entitled to costs and reasonable attorneys' fees pursuant to Civil Code § 52(b).

### FIFTH CAUSE OF ACTION

### (Civil Rights Violation California Civil Code Section 52.1)

### (As Against All Defendants)

89.     Plaintiff incorporates by reference each and every prior and subsequent allegation as though fully set forth herein.

90.     Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the defendants sued herein, HAYS and the SAN DIEGO POLICE DEPARTMENT were the agents and employees of each of the remaining Defendants and were at all times acting within the purpose and scope of such agency and employment.

91.     Despite having done nothing warranting the sexual attack by HAYS, Plaintiff was threatened, intimidated, coerced and then attacked, sexually assaulted, and abused by HAYS and the SAN DIEGO POLICE DEPARTMENT all created and participated in concert to foster an environment of impunity and to enforce the two-tier system of justice that allowed SDPD officers to engage in a pattern of sexual misconduct without any functional recrimination or punishment.

92.     At no time did Plaintiff ever authorize, permit or allow, expressly or implicitly, Defendants, and each of them, to search or seize her person for any purpose, including multiple intrusive and sexually unwanted pat downs and groping.

93.     HAYS and the other Defendants all violated California Civil Code section 52.1 by interfering with Plaintiff's exercise and enjoyment of the rights secured by the Fourth Amendment of the United States Constitution and Article I, Section 13, of the California

Constitution allowing freedom from unreasonable and warrantless search and seizure of her person, as well as Plaintiff's rights secured by Article I, Section 1, of the California Constitution to protect property, and obtain safety, happiness, and privacy.

94.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered special damages in the form of lost earnings, benefits and/or out-of-pocket expenses in an amount according to proof at the time of trial. As a further direct and proximate result of Defendants' conduct, Plaintiff will suffer additional special damages in the form of lost future earnings, benefits and/or other prospective damages in an amount according to proof at the time of trial.

95.     As a further direct and proximate result of Defendants' conduct, Plaintiff has suffered mental and emotional pain, distress and discomfort, all to her detriment and damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

96.     In committing the acts as alleged herein, HAYS acted with the intent to harm Plaintiff or with a conscious disregard for Plaintiff's rights and thus acted with malice, fraud or oppression as defined in California Civil Code section 3294, entitling Plaintiff to an award of punitive damages in an amount to be proven at the time of trial.

97.     Further, Plaintiff is entitled to a civil penalty pursuant to Civil Code § 52(b).

98.     Finally, Plaintiff is entitled to costs and reasonable attorneys' fees pursuant to Civil Code § 52(b).

///

///

///

- 37 -
*COMPLAINT FOR DAMAGES*

## SIXTH CAUSE OF ACTION

## (FALSE IMPRISONMENT)

### (As Against HAYS and Does 1-25)

99.     Plaintiff incorporates by reference each and every prior and subsequent allegation as though fully set forth herein.

100.    HAYS, without any legal or statutory basis, detained Plaintiff under color of authority as a California peace officer employed with defendant CITY OF SAN DIEGO. HAYS, without any legal justification, held plaintiff against her will and proceeded to sexually assault her, maliciously and cruelly, all for the purpose of his own sexual gratification.

101.    HAYS and the other unknown Defendants falsely imprisoned Plaintiff and prevented her from leaving. HAYS' conduct was done under color of authority but there was no probable cause or even any suspicion that she had done anything wrong. Instead, HAYS held her against her will for the sole purpose of using his authority as a police officer to sexually gratify himself.

102.    Pursuant to the established unwritten official policy, custom, and practice of the SAN DIEGO POLICE DEPARTMENT, and as also alleged herein, the conduct of HAYS and all other unknown Defendants was consented to, ratified, approved, concealed, covered up, condoned, accepted, and/or encouraged by each other, for their own benefit and gain, knowing that the conduct would result in harm to Plaintiff and other female members of the general public similarly situated. HAYS and the other Defendants, as active duty SDPD officers, all knew that their actions were unlawful and lacked any lawful justification.

103.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered special damages in the form of lost earnings, benefits and/or out-of-pocket expenses in an

*COMPLAINT FOR DAMAGES*

amount according to proof at the time of trial. As a further direct and proximate result of Defendants' conduct, Plaintiff will suffer additional special damages in the form of lost future earnings, benefits and/or other prospective damages in an amount according to proof at the time of trial.

104.    As a further direct and proximate result of Defendants' conduct, Plaintiff has suffered mental and emotional pain, distress and discomfort, all to her detriment and damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

105.    In committing the acts as alleged herein, HAYS acted with the intent to harm Plaintiff or with a conscious disregard for Plaintiff's rights and thus acted with malice, fraud or oppression as defined in California Civil Code section 3294, entitling Plaintiff to an award of punitive damages in an amount to be proven at the time of trial.

**SEVENTH CAUSE OF ACTION FOR**

**VIOLATION OF CIVIL CODE § 52.4**

**(As Against All Defendants)**

106.    Plaintiff incorporates by reference each and every prior and subsequent allegation as though fully set forth herein.

107.    HAYS, in committing the acts and crimes set forth above, has subjected Plaintiff to gender violence as defined in Civil Code §52.4, causing her severe emotional distress in the form of anxiety, depression, humiliation, shame, loss of sleep, fear and rage.

108.    In so doing, and as alleged herein, HAYS and all other unknown Defendants acted under color of authority, within the course and scope of employment, agency, and in conspiracy with each other, and pursuant to the established unwritten official policy, custom,

- 39 -

*COMPLAINT FOR DAMAGES*

and practice of the SAN DIEGO POLICE DEPARTMENT, and as also alleged herein, the conduct of HAYS, Arevalos and all other Defendants was consented to, ratified, approved, concealed, covered up, condoned, accepted, and/or encouraged by each other, for their own benefit and gain, knowing that the conduct would result in harm to Plaintiff and other female members of the general public similarly situated.

109.    Plaintiff was harmed and Defendants' conduct was a direct, proximate, and substantial factor in causing Plaintiff harm. If not for the failures and misconduct of Defendants, as alleged herein, Plaintiff would not have suffered physical harm, serious and severe emotional distress, anxiety, depression, humiliation, shame, loss of sleep, fear and rage all to her general damage, in an amount to be proven at the time of trial.

110.    As a direct and proximate result of Defendants' conduct, Plaintiff was required to retain the services of legal counsel to prosecute this case. Plaintiff has reasonably and necessarily incurred legal fees, and Plaintiff is informed and believes that she will reasonably and necessarily incur further legal fees in the future, all in an amount to be proven at trial.

111.    In committing the acts as alleged herein, HAYS acted with the intent to harm Plaintiff or with a conscious disregard for Plaintiff's rights and thus acted with malice, fraud or oppression as defined in California Civil Code section 3294, entitling Plaintiff to an award of punitive damages in an amount to be proven at the time of trial.

## EIGHTH CAUSE OF ACTION FOR

## VIOLATION OF FEDERAL CIVIL RIGHTS UNDER COLOR

## OF AUTHORITY 42 U.S.C. § 1983

### (As Against Hays and Doe Defendants)

112.    Plaintiff incorporates by reference each and every prior and subsequent

allegation as though fully set forth herein.

113.    As a result of the acts alleged above, particularly the unlawful detention, false arrest, false imprisonment and sexual assault of Plaintiff by Defendant Hays as described in paragraphs 9-56 above, Plaintiff suffered an unlawful seizure, in violation of her constitutional rights as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.  As a result, Plaintiff is entitled to damages pursuant to Title 42 U.S.C. § 1983, et seq. in an amount to be proven at trial.

114.    As a further result of the acts alleged above, particularly the unjustified and unnecessary sexual assault, improper search and repeated groping of Plaintiff's private parts by Defendant Hays, Defendant Hays conducted an unreasonable search and used unreasonable, unjustified and excessive force upon Plaintiff.   This unreasonable search and excessive force constituted an unlawful search and seizure, in violation of Plaintiff's constitutional rights as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution. As a result, Plaintiff is entitled to damages pursuant to Title 42 U.S.C. § 1983 in an amount to be proven at trial.

115.    Plaintiff was harmed and Defendants' conduct was a direct, proximate, and substantial factor in causing Plaintiff harm. If not for the failures and misconduct of Defendants, as alleged herein, Plaintiff would not have suffered physical harm, serious and severe emotional distress, anxiety, depression, humiliation, shame, loss of sleep, fear and rage all to her general damage, in an amount to be proven at the time of trial.

116.    As a direct and proximate result of Defendants' conduct, Plaintiff was required to retain the services of legal counsel to prosecute this case. Plaintiff has reasonably and necessarily incurred legal fees, and Plaintiff is informed and believes that she will reasonably

and necessarily incur further legal fees in the future, all in an amount to be proven at trial.

117.   In committing the acts alleged above, Defendant Hays acted maliciously and/or was guilty of a wanton and reckless disregard for the rights, feelings and safety of Plaintiff, and by reason thereof Plaintiff is entitled to exemplary and punitive damages in an amount to be proven at trial.

### NINTH CAUSE OF ACTION FOR

### VIOLATION OF FEDERAL CIVIL RIGHTS - 42 U.S.C. § 1983

[42 U.S.C. § 1983 Constitutional Violations via Unlawful Policies,

Customs or Habits, Against Defendant City of San Diego]

118.   Plaintiff incorporates by reference each and every prior and subsequent allegation as though fully set forth herein.

119.   On information and belief, Plaintiffs allege that defendant City of San Diego, through its police department, has unlawful policies, customs and habits of improper and inadequate hiring, training, retention, discipline and supervision of its police officers, proximately causing the constitutional deprivations, injuries and damages alleged in the First Cause of Action.   Plaintiffs are further informed and believe that other citizens have been treated unlawfully and abused by San Diego police officers, but the City of San Diego, through its police officers and police department, has a custom, policy or practice of thus leading to, and causing, the constitutional violations against Plaintiff as described above.   As a result, Plaintiff is entitled to damages pursuant to Title 42 U.S.C. § 1983, in an amount to be proven at trial.

120.   Further, on information and belief Plaintiff alleges that defendant City of San Diego, through its police department, has an unlawful policy, custom or habit of permitting,

*COMPLAINT FOR DAMAGES*

condoning and ratifying unlawful searches and seizures, sexual assaults, unlawful detentions, false arrests and unnecessary and excessive use of force by its police officers, including Defendant Hays, and of permitting, condoning and failing to take action against officers who commit acts of excessive force or unlawful search and seizure as described herein.

121.    Defendant City has a further unlawful policy, custom and habit of inadequate training, supervision and disciplining of errant police officers.  The inadequate training, inadequate supervision and improper policies includes training and policies relating to 1) detention and arrest of females, 2) search procedures related to females, 3) investigation of complaints by officer misconduct, especially related to sexual assault and sexual misconduct by police officers, 4) police officer misconduct reporting by other members of the SDPD, 5) discipline and criminal prosecution of police officer misconduct, and 6) covering up these types of acts by police officers. Plaintiff is informed and believes that Officer Hays and other officers have received grossly inadequate training regarding interaction with females, forms of sexual harassment and sexual assault, appropriate behavior while on duty, privacy rights of women detained and/or photographed by SDPD officers, investigation and disciplinary procedures for SDPD officers engaging in misconduct, especially against women, search procedures for women, and scope of detention and arrest searches.

122.    Defendant City, through its police department, has a further unlawful policy, practice, custom and habit of fostering an environment of impunity and to enforce the two-tier system of justice that allowed SDPD officers to engage in a pattern of sexual misconduct without any functional recrimination or punishment.

123.    These policies and failures constituted ratification of, and acquiescence in, acts of sexual assault, excessive force, false arrest, unlawful search and seizure, and other

1   improprieties by police officers, such as those which are alleged in Factual Allegations and the

2   above Causes of Action. These policies, acts and omissions have encouraged officers,

3   including Defendant Hays, in condoning, approving, ratifying, consenting to, encouraging,

4   accepting, refusing to stop, failing to prevent, failing to train, covering up, failing to report,

5   failing to document, fraudulently mis-characterizing citizen and co-worker complaints, and

6   remaining silent in the face of such conduct, created an atmosphere and culture of acceptance

7

8   of Arevalos' pattern and practice of conduct that went beyond a simple "code of silence," and

9   which amounted to unwritten official policies, customs, and practices that provided HAYS and

10  before officers like Arevalos with the feeling, assurance and belief that his conduct, illegal as it

11  was, was not going to be punished and would instead be protected as a privilege that went

12  along with his badge and gun as long as there was no outside third party evidence of

13

14  misconduct. Defendants knew, or it should have been obvious to Defendants, that these

15  unwritten official policies, customs, and practices were likely to result in a deprivation of

16  Plaintiff's rights to equal protection under the law, to due process of law, her right to be free

17

18  from unreasonable searches and seizures, and other rights guaranteed under the United States

19  and California Constitutions, as well as statutory and common law rights as more specifically

20  set forth herein.

21          124.   These policies and failures were the moving force behind the injuries suffered

22  by Plaintiff, constituted ratification by the City of San Diego and its police department and also

23

24  constituted deliberate indifference to the rights and safety of Plaintiff and other members of the

25  public.

26          125.   As a proximate result of the unlawful policies, customs and habits alleged

27  above, Plaintiff suffered the constitutional violations, injuries and damages as alleged herein

28

including, but not limited to, physical harm, serious and severe emotional distress, anxiety,

depression, humiliation, shame, loss of sleep, fear and rage all to her general damage, in an

amount to be proven at the time of trial. Thus Plaintiff is entitled to general and compensatory

damages against defendant City of San Diego in an amount to be proven at trial.

### TENTH CAUSE OF ACTION FOR

### VIOLATION OF FEDERAL CIVIL RIGHTS - 42 U.S.C. § 1985 (2) AND (3)

### (As Against All Defendants)

126.    Plaintiff incorporates by reference each and every prior and subsequent

allegation as though fully set forth herein.

127.    Defendants, and each of them, as more specifically set forth above, engaged in

the obstruction of justice, conspired to obstruct justice, and conspired to effectuate the

deprivation of Plaintiff's rights under the Fourth, Fifth, Sixth and 14th Amendments of the

U.S. Constitution, as well as the corresponding sections of the California Constitution.

128.    In so doing, and as alleged herein, HAYS and all other unknown Defendants

acted under color of authority, within the course and scope of employment, agency, and in

conspiracy with each other, and pursuant to the established unwritten official policies, customs,

and practices of the SAN DIEGO POLICE DEPARTMENT, and as also alleged herein, the

conduct of HAYS and all other Defendants was consented to, ratified, approved, concealed,

covered up, condoned, accepted, and/or encouraged by each other, for their own benefit and

gain, knowing that the conduct would result in harm to Plaintiff and other female members of

the general public similarly situated.

129.    Defendants' conduct deprived Plaintiff of her rights to equal protection under

the law and to due process of law, her right to be free from unreasonable search and seizure,

*COMPLAINT FOR DAMAGES*

and other rights guaranteed under the United States and California Constitutions, as well as statutory and common law rights as more specifically set forth herein.

130.   Plaintiff was harmed and Defendants' conduct was a direct, proximate, and substantial factor in causing Plaintiff harm. If not for the failures and misconduct of Defendants, as alleged herein, Plaintiff would not have suffered physical harm, serious and severe emotional distress, anxiety, depression, humiliation, shame, loss of sleep, fear and rage all to her general damage, in an amount to be proven at the time of trial.

131.   As a direct and proximate result of Defendants' conduct, Plaintiff was required to retain the services of legal counsel to prosecute this case. Plaintiff has reasonably and necessarily incurred legal fees, and Plaintiff is informed and believes that she will reasonably and necessarily incur further legal fees in the future, all in an amount to be proven at trial.

132.   In committing the acts as alleged herein, HAYS acted with the intent to harm Plaintiff or with a conscious disregard for Plaintiff's rights and thus acted with malice, fraud or oppression as defined in California Civil Code section 3294, entitling Plaintiff to an award of punitive damages in an amount to be proven at the time of trial.

## ELEVENTH CAUSE OF ACTION FOR

## VIOLATION OF FEDERAL CIVIL RIGHTS - 42 U.S.C. § 1986

### (As Against All Defendants)

133.   Plaintiff incorporates by reference each and every prior and subsequent allegation as though fully set forth herein.

134.   Defendants, and each of them, having the power to prevent or to aid in preventing the commission of the acts more specifically set forth above, and having neglected and refused to take such means available and necessary to so prevent or aid in preventing said

acts, have violated the specific provisions of 42 U.S.C. § 1986.

135.   In so doing, and as alleged herein, HAYS and all other unknown Defendants acted under color of authority, within the course and scope of employment, agency, and in conspiracy with each other, and pursuant to the established unwritten official policies, customs, and practices of the SAN DIEGO POLICE DEPARTMENT, and as also alleged herein, the conduct of HAYS and all other Defendants was consented to, ratified, approved, concealed, covered up, condoned, accepted, and/or encouraged by each other, for their own benefit and gain, knowing that the conduct would result in harm to Plaintiff and other female members of the general public similarly situated.

136.   Defendants' conduct deprived Plaintiff of her rights to equal protection under the law and to due process of law, her right to be free from unreasonable search and seizure, and other rights guaranteed under the United States and California Constitutions, as well as statutory and common law rights as more specifically set forth herein.

137.   Plaintiff was harmed and Defendants' conduct was a direct, proximate, and substantial factor in causing Plaintiff harm. If not for the failures and misconduct of Defendants, as alleged herein, Plaintiff would not have suffered physical harm, serious and severe emotional distress, anxiety, depression, humiliation, shame, loss of sleep, fear and rage all to her general damage, in an amount to be proven at the time of trial.

138.   As a direct and proximate result of Defendants' conduct, Plaintiff was required to retain the services of legal counsel to prosecute this case. Plaintiff has reasonably and necessarily incurred legal fees, and Plaintiff is informed and believes that she will reasonably and necessarily incur further legal fees in the future, all in an amount to be proven at trial.

139.   In committing the acts as alleged herein, HAYS acted with the intent to harm

Plaintiff or with a conscious disregard for Plaintiff's rights and thus acted with malice, fraud or oppression as defined in California Civil Code section 3294, entitling Plaintiff to an award of punitive damages in an amount to be proven at the time of trial.

### TWELFTH CAUSE OF ACTION FOR

### NEGLIGENCE

**(As Against All Defendants except HAYS and DOES 1-25)**

140.    Plaintiff incorporates by reference each and every prior and subsequent allegation as though fully set forth herein.

141.    At all times herein relevant, HAYS was employed by, or acting on behalf of, Defendant CITY OF SAN DIEGO.

142.    Defendants had a duty to Plaintiff and the general public to properly screen, hire, train, retain, supervise, report, discipline, monitor, control and terminate (when justified) its law enforcement officers, including Defendant HAY and other, unknown Defendants, given the foreseeability of harm to the Plaintiff and other female members of the general public similarly situated, the degree of certainty that Plaintiff suffered injury, the closeness of the connection between the Defendants' conduct and the injury suffered, the moral blame attached to the Defendants' conduct, the policy of preventing future harm to Plaintiff and other female members of the general public, the limited burden on Defendants, the consequences to the community of imposing a duty on the Defendants to exercise care with the resulting liability for breach, the availability, cost and prevalence of insurance for the risk involved, the extent of the Defendants' powers, the role imposed upon Defendants by law and the limitations imposed on Defendants by applicable budgets, if any.

- 48 -

*COMPLAINT FOR DAMAGES*

143.     Defendants breached their duty to Plaintiff by failing to properly screen, hire, train, retain, supervise, report, discipline, monitor, control and terminate (when justified) its law enforcement officers, including defendant HAYS along with other, unknown Defendants.

144.     In so doing, and as alleged herein, HAYS and all other Defendants acted under color of authority, within the course and scope of employment, agency, and in conspiracy with each other, and pursuant to the established, unwritten official policy, custom, and practice of the SAN DIEGO POLICE DEPARTMENT, and as also alleged herein, the conduct of HAYS and all other Defendants was consented to, ratified, approved, concealed, covered up, condoned, accepted, and/or encouraged by each other, for their own benefit and gain, knowing that the conduct would result in harm to Plaintiff and other female members of the general public similarly situated.

145.     As a consequence of said negligence, Plaintiff suffered physical harm, serious and severe emotional distress in the form of anxiety, depression, humiliation, shame, loss of sleep, fear and rage and incurred, and continues to incur expenses for medical treatment as well as a loss of earnings and earning capacity, all in an amount to be proven at the time of trial.

## THIRTEENTH CAUSE OF ACTION FOR

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (As Against All Defendants)

146.     Plaintiff incorporates by reference each and every prior and subsequent allegation as though fully set forth herein.

147.     Defendants' conduct, as alleged herein, was outrageous.

148.     Defendants acted knowingly, willfully, and with malicious intent and did in fact intend to cause Plaintiff emotional distress, or Defendants acted with reckless disregard for

- 49 -

Plaintiff's health, safety, welfare and well-being, and did so with reckless disregard of the probability of causing Plaintiff emotional distress.

149.   In so doing, and as alleged herein, HAYS and all other Defendants acted under color of authority, within the course and scope of employment, agency, and in conspiracy with each other, and pursuant to the established unwritten official policy, custom, and practice of the SAN DIEGO POLICE DEPARTMENT, and as also alleged herein, the conduct of HAYS and all other Defendants was consented to, ratified, approved, concealed, covered up, condoned, accepted, and/or encouraged by each other, for their own benefit and gain, knowing that the conduct would result in harm to Plaintiff and other female members of the general public similarly situated.

150.   Plaintiff was harmed and Defendants' conduct was a direct, proximate, and substantial factor in causing Plaintiff harm. If not for the failures and misconduct of Defendants, as alleged herein, Plaintiff would not have suffered physical harm, serious and severe emotional distress, anxiety, depression, humiliation, shame, loss of sleep, fear and rage all to her general damage, in an amount to be proven at the time of trial.

151.   In committing the acts as alleged herein, HAYS acted with the intent to harm Plaintiff or with a conscious disregard for Plaintiff's rights and thus acted with malice, fraud or oppression as defined in California Civil Code section 3294, entitling Plaintiff to an award of punitive damages in an amount to be proven at the time of trial.

**FOURTEENTH CAUSE OF ACTION FOR**

**VICARIOUS LIABILITY – GOVT. CODE SECTION 815 ET SEQ.**

**(As Against CITY OF SAN DIEGO and DOES 1-25)**

152.   Plaintiff incorporates by reference each and every prior and subsequent

allegation as though fully set forth herein.

153.    At all times herein relevant, HAYS and the other Defendants were employed by, or acting on behalf of, Defendant CITY OF SAN DIEGO.

154.    HAYS was unfit, incompetent, unqualified, and/or posed a danger in connection with his employment with the CITY OF SAN DIEGO.

155.    As the employer of defendants HAYS and the other Defendants, defendant CITY OF SAN DIEGO has an ongoing responsibility to provide adequate training regarding its policies and procedures related to proper methods of search and seizure, detention and use of force.  In particular, defendant CITY OF SAN DIEGO is required to provide its police officers with adequate training coupled with supervision and imposition of a disciplinary process to ward against violations of its policies and procedures.

156.    Defendant CITY OF SAN DIEGO's police department, by and through its police officers, including defendants HAYS and each of them, has engaged in a pattern and practice of violations of the civil rights of its residents in the form of improper use of force, incorrect detention, excessive force on persons in custody, and improper searches and seizures of persons and property. Defendant CITY OF SAN DIEGO knew, or should have known, of the improper and negligent conduct of its police department and police officers as evidenced by multiple claims against it as well as numerous reports by the news media, non-profit organizations and complaints by its residents about police officer misconduct involving sexual assault, rape and molestation. In fact, defendant CITY OF SAN DIEGO knew full well that its training procedures and supervision was inadequate as there existed a plethora of evidence that its police department had previously suppressed and botched the investigation of another police officer Anthony Arevalos. In the protracted investigation, it became clear that defendant CITY

OF SAN DIEGO had not adequately trained, supervised and prevented its officers from engaging in sexual misconduct.

157.     Despite knowledge of the improper conduct of its police officers, defendant CITY OF SAN DIEGO has not made any reasonable efforts to improve its training, supervision or to discipline its police officers, including defendant HAYS and previously Arevalos, such that aforesaid misconduct by defendants would have been avoided.  In particular, the defendant CITY OF SAN DIEGO, by failing to adequately employ, train, supervise and discipline its police officers, has created an atmosphere within its police department of a disregard for the rights of its residents and has further allowed a belief to pervade that its police officers will not be subject to employment discipline or even civil or criminal liability should any of its officers engage in unlawful or improper misconduct.  CITY OF SAN DIEGO has a duty of care to its residents, including plaintiff, to provide for adequate employment, training, supervision, and discipline of its police officers so that its residents would not suffer harm at the hands of the police.

158.     In negligently employing, training, supervising and disciplining its police officers, including defendant HAYS and previously Arevalos, along with CHIEF LANSDOWNE and other supervisors and each of them, defendant CITY OF SAN DIEGO negligent conduct was a proximate cause of the injuries sustained by plaintiff.

159.     In negligently employing, training, supervising and disciplining its employees, including defendant HAYS and previously Arevalos, along with LANSDOWNE and other supervisors, were a proximate cause of the injuries sustained by plaintiff. The CITY OF SAN DIEGO is vicariously liable pursuant to the California Tort Claims Act (Govt. Code Section 815 et seq.) for the acts of its employees that arise during the course and scope of employment.

Defendant HAYS along with CHIEF LANSDOWNE and other supervisors were all employees of CITY OF SAN DIEGO and the actions alleged herein along with their negligent conduct arose during their employment and was further the proximate cause of the injuries sustained by plaintiff.

160.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered special damages in the form of lost earnings, benefits and/or out-of-pocket expenses in an amount according to proof at the time of trial. As a further direct and proximate result of Defendants' conduct, Plaintiff will suffer additional special damages in the form of lost future earnings, benefits and/or other prospective damages in an amount according to proof at the time of trial.

161.    As a further direct and proximate result of Defendants' conduct, Plaintiff has suffered mental and emotional pain, distress and discomfort, all to her detriment and damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

WHEREFORE, Plaintiff prays for judgment on all causes of action against all Defendants as follows:

WHEREFORE, Plaintiff prays for judgment as follows:

1.    Special damages, according to proof;

2.    General damages, according to proof;

3.    Costs of suit;

4.    Punitive damages as against HAYS and other unknown individual Defendants, in an amount subject to proof at the time of trial;

5.    Attorneys' fees and statutory penalties as applicable under the statutes specified

herein; and,

6.   For such other and further relief as the Court may deem proper.


Dated: November 18, 2014              BRIAN WATKINS & ASSOCIATES


                                      Brian Watkins, Esq.
                                      Attorneys for Plaintiff


## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury as to all issues.

Dated: November 18, 2014              BRIAN WATKINS & ASSOCIATES


                                      Brian Watkins, Esq.
                                      Attorneys for Plaintiff

*COMPLAINT FOR DAMAGES*